UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
J & J SPORTS PRODUCTIONS, INC.,

                    Plaintiff,

    -against-

CLEOTILDE VASQUEZ a/k/a Cleotilde
Draganides, individually and d/b/a La Parranda,
and LA PARRANDA MEXICANA BAR &
RESTAURANTE CO. INC., an unknown
business entity d/b/a La Parranda,

                    Defendants.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-cv-5238 (BMC)

**COGAN**, District Judge.

       Plaintiff seeks damages under the Communications Act of 1934, *as amended*, 47 U.S.C. § 605 et seq., and the Cable & Television Consumer Protection and Competition Act of 1992, *as amended*, 47 U.S.C. § 553 *et seq*., for closed circuit television signals illegally decoded and broadcast at defendants' bar and restaurant. It is before me on plaintiff's motion for a default judgment under Federal Rule of Civil Procedure 55(b). The motion is granted to the extent set forth below.

       Plaintiff, as licensee, entered into a closed-circuit television license agreement to domestically distribute the live telecast referred to as Saul Alvarez v. Liam Smith WBO World Middle Weight Championship Fight Program. The program included preliminary bouts on the same card prior to the Alvarez v. Smith championship fight. The license agreement authorized plaintiff to sub-license the right to show the telecast to commercial establishments.

       The telecast was shown nationwide on Saturday, September 17, 2016. Establishments that contracted with plaintiff to broadcast the event were provided with electronic decoding

equipment and satellite coordinates necessary to receive and unscramble the signal.  Defendants, however, intercepted or received plaintiff's signal, allowing their patrons to unlawfully view the event in violation of 47 U.S.C. §§ 553, 605.

As an initial matter, "[o]nce default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." J & J Sports Prods., Inc. v. Bimber, No. 07-cv-590S, 2008 WL 2074083, at *1 (W.D.N.Y. May 14, 2008) (citation omitted).  However, "where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment." Id. (citing Fed. R. Civ. P. 55(b)(2)).

There is no question here as to liability.  Plaintiff has adequately pleaded signal piracy under the statutes and is entitled to damages.

The law presents several options for determining damages.  First, the aggrieved party may recover actual damages that it has suffered plus the violator's profits.  47 U.S.C. §§ 605(e)(3)(C)(i)(I), 553(c)(3)(A).  "Profits" are defined as gross revenue less (1) deductible expenses; and (2) that portion of gross revenue not attributable to the piracy.  Id.[1]

In signal theft cases in default, and perhaps in most signal theft cases, actual damages plus the violator's profits present a hollow or at least incomplete remedy.  A piracy victim is not able to ascertain the profits of a defaulting defendant, and for the marginal commercial establishment that is usually the perpetrator of signal theft, there may not be any profits that are

---

[1] Although Sections 605 and 553 substantially overlap, statutory damages should not be awarded under both sections; if Section 605 has been violated, its damages provisions, which are higher in some cases, is the only one that should apply.  See Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993).  Because the event at issue here was transmitted via satellite and defendants willfully intercepted the signal, damages under Section 605 are appropriate.

directly attributable to the offense, or at least none that are measurable with the precision that the statute requires.

This is where statutory damages are helpful. A plaintiff recovering statutory damages is entitled to recover an award from $1000 and $10,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). "When determining statutory damages under section 605, courts generally choose between two methods of calculations – a per-customer damage calculation or a flat-sum award." Joe Hand Promotions, Inc., v. Wall Street Restaurant, No. 14-cv-4267, 2015 WL 2084637, at *4 (E.D.N.Y. May 4, 2015) (citation omitted). The first approach multiplies a dollar amount, determined by the court, by the number of patrons alleged to have been present during the unauthorized telecast. See Kingvision Pay-Per-View Ltd. v. Zalazar, 653 F. Supp. 2d 335, 340 (S.D.N.Y. 2009); J & J Sports Prods., Inc. v. Guzman, 553 F. Supp. 2d 195 (E.D.N.Y. 2008) (multiplying the number of patrons who viewed event by residential price charged for the event when determining statutory damages). The second approach, the flat-sum award, is the amount a plaintiff would have charged the defendant to air the programming at its establishment. J & J Sports Prods., Inc., v. Sugar Café Inc., No. 17-cv-5350, 2018 WL 324266, at *1 (S.D.N.Y. Jan. 5, 2018). Courts generally set the higher amount as statutory damages. See id.

Since there were 6 patrons present, and the Court doubts the cost of watching this particular boxing match at home exceeded $300,[2] the Court sets $1800, the licensee fee, as the base statutory award. This does not end the analysis, however, because plaintiff also asserts that the Court should exercise its discretion to enhance damages based on defendants' allegedly

---

[2] Courts in the Eastern District of New York have adopted $54.95-per-patron as a seemingly market based standard when determining what a patron would pay to view certain programs at home. See J & J Prods., Inc. v. Fantasy Bar and Restaurant Corp., No. 17-cv-5355, 2018 WL 5018065, at *4 (S.D.N.Y. Sept. 20, 2018) (compiling cases).

willful conduct. See J & J Sports Prods., Inc. v. Onyx Dreams Inc., No. 12-cv-5355, 2013 WL 6192546, at *6 (E.D.N.Y. Nov. 26, 2013). I find that enhanced damages are appropriate because plaintiff has demonstrated that its violation was willful and "for purposes of direct or indirect commercial advantage," 47 U.S.C. § 605(e)(3)(C)(ii).

Thus, the Court will award an enhancement of $9000. This amount not only serves as specific and general deterrence, but also takes into account the increased profits the bar generated that evening, including the $5 cover charge and the bar's use of the fight to "draw potential customers who would then spend more money inside" the establishment. Kingvision Pay-Per-View, Ltd. v. Japser Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001). The $9000 enhanced award, which is five times the base statutory award, is consistent with other awards in this Circuit for comparable infractions. See, e.g., Sugar Café Inc., 2018 WL 324266, at *2 (awarding $8000 in enhanced damages where the defendant charged a $35 cover); Kingvision Pay-Per-View Ltd. v. Cardona, No. 03-cv-3839, 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (finding that $10,000 in enhanced damages, which was five times the base damages award, was appropriate because that was the amount necessary to "send the message that cable piracy is impermissible"); Jasper Grocery, 152 F. Supp. 2d at 442 (applying an enhancement of $10,000 based on the defendant's willful conduct).

Plaintiff also seeks an award of pre-judgment interest at a rate of 9% per annum from November 14, 2009, to the date of judgment. A majority of courts in this Circuit have held that pre-judgment interest should not be imposed when statutory damages have been enhanced under Section 605(e)(3)(C)(ii), as the enhancement serves to punish defendants' willful conduct rather than to compensate plaintiff for a loss. See, e.g., Joe Hand Promotions, Inc. v. La Nortena Restaurants Inc., No. 10-cv-4965, 2011 WL 1594827, at *5 (E.D.N.Y. March 28, 2011); J & J

4

Sports Prods., Inc. v. Big Daddy's Theme Palace, Inc., No. 14-cv-2765, 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015).  I agree with these courts and accordingly decline to award pre-judgment interest.

Finally, Section 605(e)(3)(B)(iii) states that a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails," and plaintiff has requested leave to move for such fees.  That request is granted, and plaintiff may move for attorneys' fees within 21 days of entry of judgment as set forth below.

## CONCLUSION

Plaintiff's motion for a default judgment is granted. The Clerk is directed to enter judgment against defendants, jointly and severally, in the amount of $10,800.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
December 26, 2019